# In the United States Court of Federal Claims

No. 09-291 T
(Filed: January 31, 2011)

```
*************************************
ESTATE OF DAVID RUBINSTEIN,      *
                                 *
                 Plaintiff,      *
                                 *
v.                               *
                                 *
THE UNITED STATES,               *
                                 *
                 Defendant.      *
*************************************
```

Discovery Dispute; RCFC 26(b); RCFC 33; Interrogatories; RCFC 34; Requests for Production of Documents; RCFC 26(c); Application for a Protective Order; Motion to Compel; RCFC 37; Tax Refund Claim; 26 U.S.C. § 6511(h); Statute of Limitations; Financial Disability; Revenue Procedure 99-21; Walter; Payment of Reasonable Expenses; Opportunity to Be Heard

Joseph A. Broyles, Los Angeles, CA, for plaintiff.

Karen M. Groen, United States Department of Justice, Washington, DC, for defendant.
G. Robson Stewart, of counsel.

## RULING ON PLAINTIFF'S APPLICATION FOR A PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL

**SWEENEY**, Judge

Before the court are plaintiff's application for a protective order limiting the scope of discovery ("application") and defendant's motion for an order to compel plaintiff to answer certain interrogatories and produce certain documents ("motion to compel"). In this tax refund case, plaintiff, the decedent's estate, seeks to recover the decedent's alleged overpayment of his 2001 income taxes. Plaintiff asserts that the decedent suffered from a mental and physical disability at the time he filed his tax return and was therefore unaware of the overpayment. As such, plaintiff contends that the decedent was financially disabled such that the statute of limitations for filing a refund claim was suspended pursuant to 26 U.S.C. § 6511(h). The instant dispute centers upon the relevance of discovery concerning the decedent's mental or physical condition prior to his death. Specifically, plaintiff alleges that the submission of a physician's statement pursuant to Revenue Procedure 99-21 precludes discovery concerning the mental or physical condition of the decedent taxpayer. For the reasons discussed below, plaintiff's application is denied and defendant's motion to compel is granted.

## I.  BACKGROUND

### A.  Nature of Plaintiff's Case

Plaintiff, the decedent's estate, filed a complaint in the United States Court of Federal Claims ("Court of Federal Claims") alleging that the decedent overpaid his federal income taxes for the 2001 tax year by $48,489.  Compl. ¶ 6.  According to plaintiff, the decedent suffered from Alzheimer's disease, to which he succumbed in April 2002.  Id. ¶¶ 6, 11.  In January 2007, Joel Rubinstein, the executor of the decedent's estate, filed a claim on behalf of plaintiff with the Internal Revenue Service ("IRS") seeking a refund of the overpayment of income tax.  Id. ¶ 7.  Together with the claim, plaintiff submitted to the IRS a letter from Dr. Robert H. Blee in which Dr. Blee stated that the decedent was incapable of managing his affairs and "was essentially mentally paralyzed by his illness."  Compl. Ex. B at 12.

Plaintiff alleges that its January 2007 refund claim was prepared in accordance with Revenue Procedure 99-21.  Compl. ¶ 12.  Revenue Procedure 99-21 describes the information required by 26 U.S.C. § 6511(h)(2)(A) for an individual taxpayer to suspend section 6511's limitation period for claiming a refund of tax due to a financial disability.  Rev. Proc. 99-21, 1999-17 I.R.B. 18.  According to plaintiff, the IRS did not consider the tolling provision set forth in section 6511(h) and denied the claim for refund because it was untimely filed.  Compl. ¶¶ 8-9.  Plaintiff's appeal of the IRS's determination was unsuccessful at the agency level because, according to plaintiff, the IRS "mistakenly concluded there was no overpayment."  Pl.'s Appl. Protective Order Limiting Scope Disc. ("Pl.'s Appl.") 6.

### B.  Procedural History

Plaintiff filed its complaint on May 8, 2009.  The court, after conducting a preliminary scheduling conference with the parties, entered an order setting the close of discovery for April 15, 2010.  In March 2010, the parties filed a joint motion requesting an extension to the discovery deadline, and defendant indicated its intent to file a motion to compel if plaintiff did not produce requested documents.  The court granted the joint motion.  Immediately thereafter, plaintiff filed a motion for summary judgment.  The court denied plaintiff's motion for summary judgment, stating:

> The timing of plaintiff's motion for summary judgment is inappropriate.
> Discovery has not yet been completed.  In fact, it is apparent that a discovery
> dispute between the parties may result in briefing on a motion to compel.  It is
> therefore premature for briefing to commence on plaintiff's motion, and the court
> shall not entertain such a motion until the discovery period has concluded.

Order 1, Mar. 11, 2010.  Defendant then filed a motion to compel the production of various documents ("first motion to compel").

In its first motion to compel, defendant argued that plaintiff untimely produced a limited number of responsive documents.  Although plaintiff initially objected to defendant's request for production, it ultimately withdrew its objection and represented to the court that it was searching for documents responsive to defendant's request and would provide those documents if and when they became available.  Plaintiff explained the predicament it encountered as follows: "[L]ocating documents responsive to Defendant's request for production of documents has been difficult due to the number of years that have passed since 2001 and the distance between Maryland[, where the decedent lived,] and California[, where Mr. Rubinstein currently resides]." Opp'n Def.'s Mot. Compel Pl. Produc. Certain Docs. 3-4.  Prior to the court's adjudication of the first motion to compel, defendant served upon plaintiff a first set of interrogatories and a second request for production of documents.  The substance of these requests is discussed below.

The court initially deferred ruling upon defendant's first motion to compel based upon (1) plaintiff's withdrawal of its objection, (2) plaintiff's explanation of the difficulties encountered to comply with defendant's production request, and (3) no indication of any bad faith conduct.  It directed defendant to file a status report indicating whether plaintiff's response to defendant's discovery request was both responsive and complete.  Defendant's subsequent status report stated: "The documents provided by plaintiff appear responsive to defendant's request. Plaintiff's response also appears complete . . . ."[1]  Def.'s Status Report 1-2.

Thereafter, defendant filed a motion for an extension of the discovery period ("motion for enlargement") in order to depose Mr. Rubinstein and conduct any additional discovery, including follow-up discovery arising from Mr. Rubinstein's deposition.  See supra note 1.  Plaintiff objected, asserting, among other things, that (1) the previous discovery dispute did not preclude defendant from deposing Mr. Rubinstein, and (2) Mr. Rubinstein's deposition would not lead to admissible evidence based upon its interpretation of the requirements set forth in, and plaintiff's compliance with, Revenue Procedure 99-21.  The court granted defendant's motion for enlargement and denied as moot defendant's first motion to compel, emphasizing that discovery was not contingent upon the admissibility of evidence:

> [P]laintiff's position that deposition testimony obtained from Mr. Rubinstein will not likely lead to admissible evidence runs afoul of the court's discovery rules[.] . . .  Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendant is entitled to obtain testimony from Mr. Rubinstein concerning his knowledge of the items on the decedent's tax return and the decedent's financial activities, particularly since such testimony is reasonably related to the statute of limitations issue and whether the decedent was disabled. . . .

---

[1]  In its status report, defendant noted its intention to file a motion for an extension of the discovery period such that it could obtain deposition testimony from Mr. Rubinstein and conduct additional discovery.

> Although they have differing legal theories concerning this case, the
> parties are entitled to develop their respective cases as they deem appropriate and
> most advantageous, including to avail themselves of all forms of discovery that
> are permitted under the rules of the court.

Estate of Rubinstein v. United States, 94 Fed. Cl. 51, 53 (2010) (citation omitted).  The court also
noted that plaintiff could have moved, but had not moved at that time, for a protective order
precluding Mr. Rubinstein's testimony at an earlier stage in these proceedings.  Ultimately,
plaintiff filed its application.

### C.  The Instant Discovery Dispute

In May 2010, defendant served its first set of interrogatories and second request for
production of documents.  Defendant's first set of interrogatories sought answers to the
following:

> 1.  With respect to each of the stocks owned by plaintiff's decedent . . . upon his
> death, as identified in any of the documents that plaintiff filed in connection with
> its probate, please identify the date or dates upon which plaintiff's decedent
> purchased the shares of that stock.
>
> 2.  Please identify each individual broker or brokerage firm that bought or sold
> any stocks or securities on behalf of plaintiff's decedent . . . at any time from
> January 1, 2001, through the date of his death.

Def.'s Mot. Order Compel Pl. Answer Certain Interrogs. & Produc. Certain Docs. ("Def.'s
Mot.") Ex. 1.  Defendant's second request for production of documents sought the following
materials:

> 1.  All documents identified, described, mentioned, or referred to in plaintiff's
> responses to defendant's First Set of Interrogatories.
>
> 2.  All documents that plaintiff or its attorneys relied upon or reviewed in
> preparing plaintiff['s] responses to defendant's First Set of Interrogatories.

Def.'s Mot. Ex. 2.

According to defendant, plaintiff was required, pursuant to Rules 33(b)(2) and 34(b)(2) of
the Rules of the United States Court of Federal Claims ("RCFC"), to serve its responses to these
discovery requests within thirty days.  Plaintiff did not request from defendant an extension of
time to respond.  Instead, plaintiff responded beyond the thirty-day deadline and noted its
objections to the discovery sought.  Def.'s Mot. Ex. 3 (contending that both interrogatories "seek
information that is irrelevant to any issue in this case," stating that plaintiff had no documents

-4-

responsive to the first item set forth in defendant's second request for production of documents, and declaring that the only documents responsive to the second item set forth in defendant's second request for production of documents were Revenue Procedure 99-21 and the district court's decision in Walter v. United States, No. 09-420, 2009 WL 5062391 (W.D. Pa. Dec. 16, 2009) (unpublished decision)).

Plaintiff asserts that any discovery related to the issue of the decedent's mental or physical condition is "irrelevant, inappropriate and wasteful" because, it contends, it has complied with Revenue Procedure 99-21 and has therefore "affirmatively established [the decedent's] disability" under 26 U.S.C. § 6511. Pl.'s Appl. 2. Specifically, plaintiff argues: "[I]f a taxpayer does what the Revenue Procedure requires, that taxpayer has established his or her disability or impairment" under section 6511. Id. at 3; accord id. at 4 ("By complying with the Revenue Procedure[,] Plaintiff in this case has established [the decedent's] disability and any further inquiry into this issue is unnecessary, wasteful and inappropriate."), 7 (asserting that "disability was established by Plaintiff's compliance with the Revenue Procedure"). Plaintiff opposes defendant's efforts to obtain discovery of information and evidence concerning the decedent's mental or physical condition prior to his death to disprove Dr. Blee's letter. Furthermore, plaintiff claims that defendant previously conducted a deposition of Dr. Blee in an "attempt[] to get Dr. Blee to contradict his certified statement attached to the claim for refund." Id. at 4. Contending that "[t]here is no allegation that Dr. Blee lied or committed any sort of fraud or deception in making his statement," plaintiff seeks a protective order to curtain what it describes as "'over-discovery'" that it believes the Federal Rules of Civil Procedure ("FRCP") were designed to prevent. Id. at 7.

Procedurally, defendant argues that plaintiff's application is untimely. While it acknowledges that RCFC 26(c) "does not contain a time limit for filing a motion for a protective order, defendant asserts that many federal courts have required that, in order to be timely, a motion for a protective order must be filed within the time set to respond to the discovery which is the subject of the motion." Def.'s Opp'n Pl.'s Appl. 3. Here, defendant argues, plaintiff failed to respond to defendant's discovery requests within thirty days and thereby waived an opportunity to seek a protective order.

Substantively, defendant notes that it has not alleged any wrongdoing on the part of plaintiff or Dr. Blee. Nevertheless, defendant states that "it became clear during defendant's deposition of the decedent's physician that the decedent did not suffer from Alzheimer's disease, as alleged in the complaint in this case." Id. at 4 n.3. Because the decedent owned stock in a substantial number of companies at the time of his death, defendant opines that he may have made significant stock purchases during the period in which he allegedly suffered from a financial disability. Accordingly, defendant asserts that its discovery requests are relevant.

Additionally, defendant argues that neither section 6511 nor Revenue Procedure 99-21 guarantees a taxpayer will be granted a suspension of the limitations period based upon the submission of a physician's statement. Thus, defendant asserts, evidence beyond a physician's

statement, including the physician's testimony and evidence of the decedent's financial activities during the period in which he allegedly suffered from a financial disability, is required for the court to determine whether the decedent did, in fact, suffer from such disability.  Moreover, defendant states that it has not yet determined whether it intends to raise an issue concerning whether plaintiff sufficiently complied with the requirements set forth in Revenue Procedure 99-21.

In its motion to compel, defendant argues that plaintiff waived its objections by failing to provide timely responses to defendant's discovery requests.  Defendant reiterates its belief that the discovery it seeks is relevant.  As such, defendant requests that the court enter an order compelling plaintiff to provide substantive responses to its discovery requests.

## II.  LEGAL STANDARDS

It is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); see also Schism v. United States, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991))); Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court.").  Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 126 (2007).  Thus, "discovery, like all matters of procedure, has ultimate and necessary boundaries."  Hickman, 329 U.S. at 507.

### A.  RCFC 26(b)

RCFC 26(b)(1) is "the general provision governing the scope of discovery."  Sparton Corp. v. United States, 77 Fed. Cl. 10, 21 n.14 (2007).  It provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by RCFC

26(b)(2)(c).[2]

RCFC 26(b)(1) (footnote added).  RCFC 26(b) mirrors FRCP 26(b).[3]  Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 215 (2006).  The 1946 amendment to FRCP 26(b) "ma[de] clear the broad scope of examination," which included

> not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, . . . or any other matters which may aid a party in the preparation or presentation of his case.

FRCP 26 advisory committee's note (1946 amendment); see also Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996) (citing RCFC 26 and stating that "we are similarly mindful of the generally broad scope of discovery in this court").

FRCP 26(b)(1) was amended in 2000, at which time the advisory committee "introduced a . . . note of caution about the provision . . . ."  8 Charles Alan Wright et al., Federal Practice and Procedure § 2007 (3d ed. 2010).  The amendments were "intend[ed for] the parties and the court [to] focus on the actual claims and defenses involved in the action,"  FRCP 26(b)(1) advisory committee note (2000 amendment), whereas previously parties "were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action,'" 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.41 (3d ed. 2008) (quoting the 1983 version of FRCP 26(b)(1)).  Accordingly, the 2000 amendments "narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense.'"  Id. (quoting FRCP 26(b)(1)).  While courts would "retain[] authority to order discovery of any matter relevant to the subject matter involved in the action for good cause," the amended rule was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."[4]  FRCP 26(b)(1) advisory committee's note (2000 amendment).  Under

_____

[2]  As discussed below, RCFC 26(b)(2)(c) requires that the court limit the frequency of or extend discovery under certain circumstances.

[3]  "[T]o the extent permitted by this court's jurisdiction," the RCFC "shall be consistent with the FRCP . . . ."  RCFC 83(a).  Interpretation of the RCFC "will be guided by case law and the Advisory Committee Notes that accompany the [FRCP]."  RCFC rules committee's note (2002); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of the FRCP "informs the Court's analysis" of the corresponding RCFC).

[4]  Thus, where a party objects that requested discovery

goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is

the current standard, courts are advised to focus upon the specific claims or defenses when determining the scope of discovery.  See id.  Of course, "[t]his does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." 6 Moore et al., supra, ¶ 26.41.  Rather, "the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery."  Id.

A party's ability to obtain pretrial discovery is not unrestrained.  RCFC 26(b)(2)(c) authorizes a court to limit "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules" if: (1) the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) the party seeking discovery "has had ample opportunity to obtain the information by discovery in the action"; or (3) the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  RCFC 26(b)(2)(C)(i)-(iii).  RCFC 26(b)(2)(C) permits a court to limit discovery on its own initiative or in response to a motion filed pursuant to RCFC 26(c).

## B. RCFC 26(c)

RCFC 26(c) "tempers the breadth of discovery by authorizing the court, for good cause shown, to issue a protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Bos. Edison Co. v. United States, 75 Fed. Cl. 557, 561 (2007) (quoting RCFC 26(c)); see also 8A Wright et al., supra, § 2036 (stating that FRCP 26(c) was adopted "as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26(b)(1)").  It provides:

> A party or any person from whom discovery is sought may move for a protective order.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

RCFC 26(c)(1).  Such an order "is directed to the broad discretion of the court."  St. Matthew Publ'g, Inc. v. United States, 41 Fed. Cl. 142, 145 (1998).

_____

relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

FRCP 26(b)(1) advisory committee's note (2000 amendment).  The court's determination of the scope of discovery, when its intervention is sought by the parties, would be made "according to the reasonable needs of the action."  Id.

Like its FRCP counterpart, RCFC 26(c) "lists eight kinds of protective orders that may be made," although the court may also "be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." 8A Wright et al., supra, § 2036. For example, the court may order, among other things, that (1) the discovery may not be had at all; (2) the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) the discovery may be had by a method of discovery other than that selected by the party seeking discovery; or (4) certain matters may not be inquired into, or that the scope of the discovery be limited to certain matters. RCFC 26(c)(1)(A)-(D). If the court denies a motion for a protective order either in whole or in part, then it may, "on just terms, order that any party or person provide or permit discovery."[5] RCFC 26(c)(2).

RCFC 26(c) requires that "good cause" be shown for issuance of a protective order. The burden of demonstrating "good cause" rests with the party seeking to shield itself from discovery. Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001). In order to establish "good cause," a party must show "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999); see also Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004) (indicating that good cause is established "by specifically demonstrating that 'disclosure will cause a clearly defined and serious injury'" (quoting Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995))), aff'd, 453 F.3d 1355 (Fed. Cir. 2006). The "'good cause' requirement is strict. . . . [T]he party . . . must make a particularized factual showing of the harm that would be sustained if the court did not grant a protective order." Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 433 (1991). Thus, broad allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order. Forest Prods. Nw., Inc., 62 Fed. Cl. at 114; see also Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection."); 8A Wright et al., supra, § 2035 ("[C]ourts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.").

Courts may consider several factors, "which are neither mandatory nor exhaustive," Glenmede Trust Co., 56 F.3d at 483, in their determination of whether to issue a protective order. These include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to the public

---

[5] The rule also states that the provisions of RCFC 37(a)(5) apply to the award of expenses incurred in relation to the motion. RCFC 26(c)(3). For a discussion of RCFC 37, see Part II.E, infra.

health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issue[s] important to the public.

Forest Prods. Nw., Inc., 62 Fed. Cl. at 114 n.9 (citing Glenmede Trust Co., 56 F.3d at 483). The trial court "is best situated to determine what factors are relevant to the dispute . . . ." Glenmede Trust Co., 56 F.3d at 483. In the case of interrogatories or requests for production, protective orders have been described as "not exceptional . . . ." 8A Wright et al., supra, § 2037.

## C.  RCFC 33

RCFC 33 governs interrogatories to parties and permits a party to serve written interrogatories upon any other party. Specifically, it provides: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete parts." RCFC 33(a)(1). An interrogatory "may relate to any matter that may be inquired into under RCFC 26(b)." RCFC 33(a)(2). The responding party must serve its answers and any objections within thirty days after being served with the interrogatories, though a shorter or longer period of time may either be stipulated to under RCFC 29 or ordered by the court. RCFC 33(b)(2). Substantively, the responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories." Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996). Interrogatories "should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry." 8B Wright et al., supra, § 2177. Each answer must be made "separately and fully in writing under oath," RCFC 33(b)(3), and an evasive or incomplete answer is treated as a failure to answer, RCFC 37(a)(4). "Misleading and evasive answers to interrogatories justify the court's viewing with suspicion the contentions of the party so answering." Ruiz v. Hamburg-Am. Line, 478 F.2d 29, 33 (9th Cir. 1973).

## D.  RCFC 34

RCFC 34 governs the production of documents. A party may serve on any other party a request, within the scope of RCFC 26(b), to "produce and permit the requesting party . . . to inspect, copy, test, or sample," among other things, "any designated documents or electronically stored information," RCFC 34(a)(1)(A), or "any designated tangible things," RCFC 34(a)(1)(B). The request must (1) describe with reasonable particularity each item or category of items inspected, and (2) specify a reasonable time, place, and manner for the inspection and for performing the related acts. RCFC 34(b)(1)(A)-(B). Additionally, the request "may specify the form or forms in which electronically stored information is to be produced." RCFC 34(b)(1)(C).

The procedure set forth in RCFC 34, like its FRCP counterpart, "is essentially the same as that in Rule 33 . . . ." FRCP 34(b) advisory committee's note (1970 amendment). Accordingly, the party to whom the request is directed "must respond in writing within 30 days

after being served," though a shorter or longer time period may be stipulated to under RCFC 29 or be ordered by the court.  RCFC 34(b)(2)(A); accord 8B Wright et al., supra, § 2213 (indicating that responses should "ordinarily be served within 30 days after service of the request").  Each response "must either state that inspection and related activities will be permitted as requested or state an objection to the rest, including the reasons."  RCFC 34(b)(2)(B).  The failure to make a proper objection to a document production request may result in the waiver of those objections.  See Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections.").

### E.  RCFC 37

RCFC 37 addresses the failure to make disclosures or cooperate in discovery and permits sanctions:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

RCFC 37(a)(1).  The rule further provides:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:
>
> . . .
>
> (iii) a party fails to answer an interrogatory submitted under RCFC 33; or
>
> (iv) a party fails to respond that inspection will be permitted–or fails to permit inspection–as requested under RCFC 34.

RCFC 37(a)(3)(B).

RCFC 37, like its FRCP counterpart, does not specify a time limit for filing a motion to compel.  Cabot v. United States, 35 Fed. Cl. 80, 81 (1996); see also Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006) (noting that FRCP 37 provides no deadline for the filing of motions to compel discovery).  Nonetheless, "courts often decline to extend the discovery deadline, and refuse to exclude evidence when they believe that the moving party has unduly delayed in bringing up the alleged deficiency in a discovery response."  8B Wright et al., supra, § 2285 (footnote omitted).  Thus, courts have looked to the deadline for completion of discovery when determining the timeliness of a motion to compel.  See Days Inn Worldwide,

Inc., 237 F.R.D. at 396-97 (citing cases); Cabot, 35 Fed. Cl. at 81 (rejecting plaintiff's timeliness argument that the motion was brought after discovery closed based upon plaintiff's prior unwillingness to respond to defendant's requests).

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). Additionally, an RCFC 37 motion must include a certification that the movant has in good faith conferred or attempted to confer. Like its FRCP counterpart, RCFC 37 "does not set forth what must be included in the moving party's certification except to indicate that the document must declare that the movant has 'in good faith conferred or attempted to confer' . . . ." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). Good faith "cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention; rather it mandates a genuine attempt to resolve the discovery dispute through non-judicial means." Id. Conferment requires that the moving party "must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id.

If the court grants a motion to compel, then it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." RCFC 37(a)(5)(A). Nevertheless, payment may not be ordered if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. RCFC 37(a)(5)(A)(i)-(iii). Furthermore, if the court denies the motion, then it may issue a protective order pursuant to RCFC 26(c) and, after giving an opportunity to be heard, "require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." RCFC 37(a)(5)(B). Once again, payment may not be ordered if the motion was substantially justified or if other circumstances make an award of expenses unjust. Id.

### III. DISCUSSION

### A. Plaintiff's Application

As an initial matter, the court notes that plaintiff's application does not comply with RCFC 26(c)(1). Nowhere in the application does plaintiff certify that it has in good faith conferred or attempted to confer with defendant in an effort to resolve the instant dispute. Instead, plaintiff recounts the degree to which it believes it has been treated unfairly by the IRS and defendant in the instant proceedings. The exhibits appended to its application pertain to communications between plaintiff's counsel and the IRS, not communications between plaintiff's counsel and government counsel. Moreover, plaintiff's reply in support of its

application merely reproduces as exhibits its original application and opposition to defendant's motion: "Rather than repeating the arguments here, Plaintiff refers the Court to its earlier filed Application . . . and its Opposition to Defendant's Motion to Compel . . . ." Pl.'s Reply Def.'s Opp'n Pl.'s Appl. 2.  Because plaintiff's application lacks a certification that it conferred or attempted to confer in good faith with government counsel in an attempt to resolve the instant dispute, the court must deny plaintiff's application.

Alternatively, to the extent that the court infers from a totality of the circumstances that plaintiff conferred or attempted to confer in good faith with defendant, the court reaches the same determination.  Plaintiff's objections to defendant's discovery requests are based upon the argument that Revenue Procedure 99-21 describes the only information that is necessary, relevant, or required under section 6511 in order to establish a financial disability.  In support of this position, plaintiff relies upon Walter, an unpublished decision of the United States District Court for the Western District of Pennsylvania.  Although the decision in Walter is not binding on this court, see AINS, Inc. v. United States, 365 F.3d 1333, 1336 n.1 (Fed. Cir. 2004) (stating that holdings of the Court of Federal Claims, "like those of federal district courts, are instructive but not precedential, and do not bind future court holdings"); Schmidt v. United States, 89 Fed. Cl. 111, 125 (2009) (recognizing that district court decisions "can be persuasive"), the court addresses it, as well as section 6511, Revenue Procedure 99-21, and additional case law, below.

### 1.  Applicable Legal Provisions

#### a.  Section 6511(h)

Section 6511 pertains to limitations on credits or refunds.  The general rule is set forth in subsection (a), which provides:

> Claim for credit of refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . .

26 U.S.C. § 6511(a) (2006).  Subsection (b)(1) provides that "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period." Id. § 6511(b)(1).  Subsection (b)(2) defines two "look-back" periods and imposes substantive limitations upon the amount of the refund a taxpayer can collect.  First, if a claim is filed "during the 3-year period" set forth in 26 U.S.C. § 6511(a), then the amount of the credit or refund "shall not exceed the portion of the tax payed within the period[] immediately preceding the filing of the claim . . . ." Id. § 6511(b)(2)(A).  Second, if a claim is "not filed within such 3-year period," then the amount of the credit or refund "shall not exceed

the portion of the tax paid during the 2 years immediately preceding the filing of the claim."[6]  Id. § 6511(b)(2)(B).

"[U]nless a claim for refund of a tax has been filed within the time limits imposed by [section] 6511(a), a suit for refund . . . may not be maintained in any court."  United States v. Dalm, 494 U.S. 596, 602 (1990) (citing United States v. Kales, 314 U.S. 186, 193 (1941)).  In United States v. Brockamp, the United States Supreme Court ("Supreme Court") held that Congress did not intend for the equitable tolling doctrine to apply to section 6511.  519 U.S. 347, 348 (1997).  In Brockamp, each taxpayer alleged that they suffered from a disability that prevented them from filing a refund claim with the statutory time period.  Id.  The United States Court of Appeals for the Ninth Circuit interpreted section 6511 "as if it . . . contain[ed] an implied exception that would permit 'equitable tolling' . . . [and] then applied principles of equity to each case."  Id. at 349.  The Supreme Court reversed, reasoning that, "[t]o read an 'equitable tolling' provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears.  To do so would work a kind of linguistic havoc."  Id. at 352.

Thereafter, Congress sought to amend section 6511 because, "in cases of severe disability, equitable tolling should be considered in the application of the statutory limitations on the filing of tax refund claims."  S. Rep. No. 105-174, at 60 (1998).  Specifically, the legislation was intended to

> permit[] equitable tolling of the statute of limitations for refund claims of an individual taxpayer during any period of the individual's life in which he or she is unable to manage his or her financial affairs by reason of a medically determinable physical or mental impairment that can be expected to result in death or to last for a continuous period of not less than 12 months.

H.R. Conf. Rep. No. 105-599, at 255 (1997).  Tolling would not apply during periods in which the taxpayer's spouse or another person was authorized to act on the taxpayer's behalf in financial matters.  Id.; accord S. Rep. No. 105-174, at 60.

Enacted as part of the Internal Revenue Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685, 740-41, section 6511(h) permits the suspension of the limitations period while a taxpayer is unable to manage his or her financial affairs due to a disability.  It provides:

---

[6]  Additionally, if no claim is filed, then the credit or refund "shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed."  26 U.S.C. § 6511(b)(2)(C).

(1) In general

      In the case of an individual, the running of the periods specified in subsections (a)[ and] (b)[] . . . shall be suspended during any period of such individual's life that such individual is financially disabled.

(2) Financially disabled

      (A) In general

            For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

      (B) Exception where individual has guardian, etc.

            An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.

26 U.S.C. § 6511(h)(1)-(2).

### b.  Revenue Procedure 99-21

      Pursuant to section 6511(h), the Commissioner of the IRS prescribed guidelines to determine whether a taxpayer is financially disabled.  Revenue Procedure 99-21 sets forth the information required under section 6511(h)(2)(A) "in order to request suspension of the period of limitations under [section] 6511 for claiming a credit or refund of tax due to an individual taxpayer's financial disability."  1999-17 I.R.B. 18, at § 1.  The information set forth in Revenue Procedure 99-21 must be submitted with the taxpayer's claim for credit or refund of tax.  Id.

      Revenue Procedure 99-21 requires that the taxpayer furnish to the IRS two written statements.  The first written statement, which must be made by a physician "qualified to make the determination," id. § 4(1), must set forth the following:

(a) the name and a description of the taxpayer's physical or mental impairment;

(b) the physician's medical opinion that the physical or mental impairment prevented the taxpayer from managing the taxpayer's financial affairs;

(c) the physician's medical opinion that the physical or mental impairment was or can be expected to result in death, or that it has lasted (or can be expected to last) for a continuous period of not less than 12 months;

(d) to the best of the physician's knowledge, the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs; and

(e) the following certification, signed by the physician:

> I hereby certify that, to the best of my knowledge and belief, the above representations are true, correct, and complete.

Id. § 4(1)(a)-(e).  The second written statement, which must be submitted by the person signing the claim for refund, must set forth that "no person, including the taxpayer's spouse, was authorized to act on behalf of the taxpayer in financial matters during the period described in paragraph (1)(d) . . . ."  Id. § 4(2).  Alternatively, if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period at issue, then the person signing the claim or refund must indicate the "beginning and ending dates of the period of time the person was so authorized."  Id.

## 2. The Plain Language of Revenue Procedure 99-21 Does Not Support Plaintiff's Position

Plaintiff suggests that compliance with Revenue Procedure 99-21 (1) constitutes prima facie evidence that the decedent was financially disabled and is therefore entitled to tolling of the statute of limitations pursuant to section 6511(h), and (2) shields plaintiff from any discovery related to the decedent's mental or physical condition.  Plaintiff is mistaken.  Section 6511(h)(2)(A) provides that an individual "shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require." (emphasis added).  Thus, Revenue Procedure 99-21 sets forth only the form and substance of the proof that must be submitted to the IRS.  See 1999-17 I.R.B. 18, § 2.02 (indicating that section 6511(h)(2)(A) "requires that proof of the taxpayer's financial disability be furnished" to the IRS).  As the plain language of the revenue procedure clearly states, this proof is required "in order to request suspension of the period of limitations under [section] 6511 for claiming a credit or refund of tax due to an individual taxpayer's claim for credit or refund of tax." 1999-17 I.R.B. 18, § 1 (emphasis added); see also id. § 4 (stating that documentation must be submitted "with a claim for credit or refund of tax to claim financial disability").  "Strict compliance" with the revenue procedure is necessary.  Ibeagwa v. United States, No. 09-C-1267, 2009 WL 3172165, at *2 (N.D. Ill. Sept. 30, 2009) (citing Nunn v. United States, No. 3:08CV-199-S, 2009 WL 260803, at *4 (W.D. Ky. Feb. 4, 2009)).  But see Walter, 2009 WL 5062391, at

-16-

*10 (rejecting the argument that, absent strict compliance with Revenue Procedure 99-21, a court cannot make a determination of financial disability under section 6511(h) and citing cases in which courts determined that section 6511(h) was inapplicable despite the taxpayer's failure to submit a physician statement).  Furthermore, an allegation that a taxpayer complied with Revenue Procedure 99-21 is insufficient to establish a financial disability such that section 6511(h) tolls the statute of limitations.  Cf. Nunn, 2009 WL 260803, at *4 (determining that the taxpayer, who never alleged compliance with Revenue Procedure 99-21, could not invoke section 6511(h) based upon the fact of his incarceration).

A "request" means "[t]o express a desire for; ask for," American Heritage College Dictionary 1182 (4th ed. 2004), and a "claim" means "[t]o demand, ask for," id. at 264.  As the court noted in National Data Corp. & Subsidiaries v. United States, the use of the verb "to be" with an infinitive conveys a sense of planning for the future.  50 Fed. Cl. 24, 30 n.12 (2001).  Accordingly, Revenue Procedure 99-21 establishes the procedure through which taxpayers must submit proof that they believe supports a future determination by the IRS of financial disability during a specific time period: "To be eligible, the taxpayer must present proof of a qualifying impairment in the form and manner specified by the Secretary."  Haller v. Comm'r, 100 T.C.M. (CCH) 9 (2010) (emphasis added).  Revenue Procedure 99-21 does not address either the sufficiency or merits of the proof, and mere submission of proof does not establish compliance with Revenue Procedure 99-21.  See, e.g., Ibeagwa, 2009 WL 3172165, at *3-4 (determining that physician statements submitted by the taxpayer did not satisfy the requirements of Revenue Procedure 99-21); Henry v. United States, No. 3:05-CV-1409-D, 2006 WL 3780878, at *4-5 (N.D. Tex. Dec. 26, 2006) (unpublished decision) (determining that various statements submitted by the taxpayer did not satisfy the procedural requirements set forth in Revenue Procedure 99-21); Green v. Comm'r, 97 T.C.M. (CCH) 1542 (2009) (determining that the taxpayer failed to establish a financial disability, in part, because a letter from a clinical psychologist did not constitute a written statement from a physician (citing 42 U.S.C. § 1395x(r) (1998))).  Therefore, based upon the plain language of Revenue Procedure 99-21, submission of proof that complies with the form and substance set forth in the revenue procedure constitutes a prerequisite that must be satisfied before the IRS can address the merits of the proof and make a determination that the taxpayer suffered–or did not suffer–from a financial disability as defined in section 6511(h)(2)(A).  Indeed, had the IRS intended to establish a procedure through which the submission of any physician statement, without confirmation of the statements contained therein, affirmatively established a taxpayer's financial disability, the revenue procedure would so indicate.  Similarly, Congress could have inserted language into section 6511(h) that precluded the IRS or a court from scrutinizing the substance of such a physician statement.

### 3. Judicial Decisions Interpreting and Applying Revenue Procedure 99-21 Do Not Support Plaintiff's Position

The principal case upon which plaintiff relies is Walter, wherein the district court determined that the taxpayers complied with Revenue Procedure 99-21 and satisfied the requirements necessary to invoke the tolling provision set forth in section 6511(h).  2009 WL

5062391, at *11.  In <u>Walter</u>, a husband and wife seeking a refund in connection with their 2002 tax return filed a refund claim in 2007, more than four years after it was due.  <u>Id.</u> at *2-3, 5, 7. Together with their refund claim, the taxpayers submitted a statement from their physician, which indicated that they both suffered from extreme severe physical and emotional conditions.[7] <u>Id.</u> at *8.  After elaborating upon the taxpayers' conditions, the physician stated:

> It is my medical opinion, with a reasonable degree of medical certainty, that . . . [the husband's] failure to file returns from 2002 onwards (until someone else took over the responsibility for him) was a result of his clinical depression.  Indeed, completely giving up on a problem and avoiding it is a frequent reaction of someone suffering from clinical depression if that person encounters frustrations in any initial effort to do something.[8]

<u>Id.</u> at *9 (footnote added); <u>see also id.</u> (noting that the physician composed a second letter, which elaborated upon the husband's condition, and opined, "with a reasonable degree of medical certainty," that the husband "has lacked since 2002 the mental capacity to handle financial affairs (possessed by a normal person), let alone do something as relatively complicated as completing and filing income tax returns").

Rejecting the government's argument that the first letter from the physician failed to comply with Revenue Procedure 99-21, the court explained that any deficiencies were remedied by the physician's subsequent statement, which was appended as an exhibit to the taxpayers' pending motion before the court but, according to the government, had never been submitted to the IRS.  <u>Id.</u> at *9-10.  The court noted that the IRS never rejected the physician's initial statement and simply "never addressed it."  <u>Id.</u> at *10.  Moreover, the court, upon a substantive review of the physician's statements and the underlying factual matters presented by the parties, concluded that the taxpayers substantially complied with Revenue Procedure 99-21 such that they were entitled to the invoke the tolling provision set forth in section 6511(h).  <u>Id.</u> at *11.

Plaintiff interprets <u>Walter</u> as imposing a limitation upon the introduction of any evidence that challenges the existence of a taxpayer's disability once a taxpayer submits proof that the taxpayer believes complies with Revenue Procedure 99-21.  Pl.'s Appl. 5.  Plaintiff misreads

---

[7] According to the taxpayers' physician, the wife suffered from an extremely rare neurological disease that resulted in an increased inability to maintain muscle control.  <u>Walter</u>, 2009 WL 5062391, at *8.  The husband suffered from diabetes and extreme clinical depression, the latter of which, the physician opined, resulted from his own physical condition, the difficulty associated with caring for an invalid spouse, and other family-related issues.  <u>Id.</u>

[8] With regard to the wife, the physician stated his medical opinion, "with a reasonable degree of medical certainty," that she "lacked for a good ten years or more either the mental capacity or physical ability to handle any financial matters, let alone something as relatively complicated as completing income tax returns."  <u>Walter</u>, 2009 WL 5062391, at *9.

Walter.  First, the Walter court did not hold that a taxpayer's own assertion of substantial compliance with Revenue Procedure 99-21 establishes a financial disability as a matter of law.  Rather, the Walter court–and not the taxpayers themselves–determined, only after reviewing the complete record, that the taxpayers "demonstrated that they substantially complied with Revenue Procedure 99-21 . . . ."  2009 WL 5062391, at *11.  Therefore, it is not the party asserting a financial disability who determines the existence of a financial disability.  Consequently, the court rejects plaintiff's assertion that its compliance with Revenue Procedure 99-21 "affirmatively established" a financial disability.  Pl.'s Appl. 2.

Second, the Walter court did not declare that a taxpayer who submits proof of a financial disability is insulated from further inquiry, shielded against the introduction of evidence that challenges a financial disability claim, or precluded from presenting additional evidence supporting that claim.  Indeed, although the IRS never received the physician's supplemental statement, the Walter court considered it over the government's objection:

> The United States cites no relevant authority to support its contention that [the physician's] supplemental letter cannot be considered because it was not presented to the IRS first . . . .  Plaintiffs did submit their refund claim to the IRS with [the physician's] letter.  Neither [case law cited by the government] nor any other case holds that the taxpayer may not remedy a technical defect by submitting a supplemental letter, particularly when the IRS did not even reject the original letter.

Walter, 2009 WL 5062391, at *10.  Significantly, the Walter court concluded that, while the taxpayers demonstrated substantial compliance with Revenue Procedure 99-21, the government "ha[d] not demonstrated otherwise" with its own evidence.  Id. at *11.  Thus, the Walter court was willing to consider the government's evidence.[9]  It was not, however, willing to permit the government to utilize the husband's deposition testimony against him, concluding that such testimony was not a proper substitute for "medical evidence."[10]  Walter, 2009 WL 5062391, at

---

[9]  Similarly, in Perkins v. Commissioner, the United States Tax Court ("Tax Court") based its ruling that the taxpayer was not financially disabled within the meaning of section 6511(h), in part, upon the taxpayer's own testimony at trial that he earned income working, paid bills, entered into lease agreements with his wife, and was in charge of household finances during the period at issue.  96 T.C.M. (CCH) 352 (2008).

[10]  A similar conclusion was reached in both Henry and Perkins.  In Henry, the district court declined to consider various affidavits, including those from the taxpayer herself, her children, and her certified public accountant describing her physical impairments because "[t]he taxpayer's own opinion, or the opinion of one who is not qualified to offer a medical opinion, cannot satisfy the procedural requirements" of the revenue procedure.  2006 WL 3780878, at *4-5.  The Henry court also determined that two physician statements submitted by the taxpayer were insufficient because, among other reasons, they did not contain a medical opinion that the

*11. This testimony, the <u>Walter</u> court noted, "did not exist at the time the IRS was presented with Plaintiffs' refund request accompanied by Dr. Balestrino's letter . . . ." <u>Id.</u> at *11 n.10. Moreover, the <u>Walter</u> court reasoned that "neither the statute nor the revenue procedure contemplates taking such depositions <u>and using them in this manner</u>," <u>viz.</u>, introducing nonmedical evidence in the form of the taxpayer's own deposition testimony against the taxpayer to challenge a physician's statements. <u>Id.</u> (emphasis added). In the absence of medical evidence introduced by the government, the <u>Walter</u> court determined that the taxpayers had complied with the revenue procedure and established a financial disability. <u>Id.</u> at *11.

Although plaintiff focuses primarily upon the <u>Walter</u> court's refusal to consider deposition testimony, it ignores a more important element in that case: the existence of the husband's deposition testimony in the first place. Clearly, the <u>Walter</u> court did not prevent the government from obtaining testimony from the husband during the course of discovery. Indeed, the scope and manner of discovery was unrelated to the <u>Walter</u> court's ultimate unwillingness to consider non-medical evidence proffered for a specific purpose during the merits stage of the proceedings. Since the <u>Walter</u> court permitted the government to obtain testimony from the husband about his alleged financial disability, <u>Walter</u> does not support plaintiff's position that evidence related to the issue of the decedent's mental or physical condition cannot be obtained during discovery.

Ultimately, <u>Walter</u> is distinguishable because it did not present a discovery dispute and was before the district court on the merits. For these same reasons, other decisions that have addressed section 6511(h) and Revenue Procedure 99-21 are inapposite to the circumstances presented here because courts addressing these issues did so after the close of discovery and in response to dispositive motions. <u>See, e.g.</u>, <u>Ibeagwa</u>, 2009 WL 3172165, at *4 (dismissing the action without prejudice for lack of subject matter jurisdiction); <u>Nunn</u>, 2009 WL 260803, at *1 (dismissing the complaint because the plaintiff's incarceration did not fall within the exceptions set forth in section 6511(h)); <u>Henry</u>, 2006 WL 3780878, at *3-5 (granting summary judgment in favor of the defendant because the taxpayer failed to produce a physician's medical opinion indicating that she suffered from a physical impairment during the relevant time period at issue that prevented her from managing her financial affairs); <u>Green</u>, 97 T.C.M. (CCH) at 1542 (holding that the taxpayers did not establish a financial disability and permitting the IRS to proceed with a proposed collection action); <u>Perkins</u>, 96 T.C.M. (CCH) at 352 (determining, after

---

physical impairment precluded the taxpayer from managing her own financial affairs and did not describe the specific time period during which the taxpayer was affected by the alleged impairment. <u>Id.</u> at *3-4. In <u>Perkins</u>, the Tax Court noted that the taxpayer's medical record, which included "detailed notes" compiled by a therapist and a psychiatrist, was submitted during trial, but the record was devoid of "any statement by a physician to the effect that petitioner was incapable of managing his financial affairs, or that he suffered from an impairment that could be expected to result in death . . . ." 96 T.C.M. (CCH) at 352. The <u>Perkins</u> court ultimately did not determine the admissibility of the medical record because it was "insufficient to establish that petitioner was financially disabled within the meaning of section 6511(h)." <u>Id.</u>

the completion of trial, that the taxpayer's medical record lacked any statement by a physician to the effect that the taxpayer was incapable of managing his financial affairs and permitting the IRS to collect by levies additions to tax and interest the taxpayer owed); Brosi v. Comm'r, 120 T.C. 5, 10-12 (2003) (granting summary judgment against a taxpayer who failed to "articulate any physical or mental impairment from which he suffered during any period at issue"); Lieberman v. Dep't of Revenue, No. TC-MD 040902A, 2005 WL 1432441, at *1 (Ore. Tax. Magistrate Div. May 19, 2005) (unpublished decision) (determining, on the merits, that a physician's statement certifying that the taxpayer suffered from various medical conditions satisfied the requirements of Revenue Procedure 99-21 and that "[n]either that conclusion, nor the [physician's] qualifications . . . have been disputed by Defendant").  Furthermore, none of these decisions suggests that a court's determination of whether a taxpayer is financially disabled is limited to the materials submitted to the IRS by the taxpayer.  The Walter court, as discussed above, considered a physician's supplemental statement that was not submitted to the IRS.  Similarly, the Perkins court's determination was informed by the taxpayer's own testimony at trial during which he acknowledged working and earning income, entering into lease agreements with his wife, and assuming responsibility for household finances during the period at issue in that case.  2008 WL 4977439, at *3.  Furthermore, the Tax Court in Haller, in support of its posttrial determination that the taxpayer failed to prove a financial disability, relied upon the "entire record" of evidence, including the taxpayer's (1) ability to earn income and care for his children, (2) awareness of his obligation to file a federal income tax return, (3) ability to hire an accountant to prepare a tax return, and (4) efforts to contact the IRS and seek pro bono tax preparation services.  100 T.C.M. (CCH) at 9.

These cases are instructive insofar as they reaffirm the court's role in determining whether a taxpayer is financially disabled for purposes of section 6511(h) based upon a review of record evidence that includes, but is not limited to, the proof required under Revenue Procedure 99-21.  The court need not reach that ultimate determination at this juncture.  For purposes of adjudicating plaintiff's application, these cases illustrate that discovery into the mental or physical condition of a taxpayer claiming a financial disability is not contingent upon submission of proof described in–or proof purportedly complying with–Revenue Procedure 99-21.  Plaintiff cites no authority to the contrary.  Moreover, the court is unwilling to set a precedent in which a taxpayer's submission of proof to the IRS that allegedly complies with a revenue procedure creates an irrebuttable presumption of financial disability that effectively insulates the taxpayer from any inquiry concerning, or challenge to, the substance thereof.

If the IRS intended to limit its inquiry to the four corners of a certified physician statement, as plaintiff suggests, then the IRS would have expressly foreclosed in the revenue procedure itself the possibility of further investigation or discovery.  It did not.  The court finds it inconceivable that the IRS would establish a procedure that could foster widespread abuse.  Indeed, an unscrupulous physician could potentially submit a false certified statement that would be insulated from any scrutiny or confirmation at the agency level or in the courts.  Surely this was not the IRS's intent when it promulgated Revenue Procedure 99-21, particularly since the statute of limitations set forth in section 6511 directly implicates a waiver of sovereign immunity.

See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008) (citing Brockamp, 519 U.S. at 352-53; Dalm, 494 U.S. at 609-10).

The ultimate issue in this case is whether the decedent suffered from a financial disability such that section 6511(h) tolled the statute of limitations for filing a tax refund claim. This issue is directly "relevant to any party's claim or defense" under RCFC 26(b). Accordingly, the court rejects plaintiff's contention that defendant is engaging in "'over-discovery'" and is not persuaded that the limitations set forth in RCFC 26(b)(2)(C) are applicable in this case. Moreover, although plaintiff claims mistreatment "at every level" of these proceedings and cites specific, unpleasant circumstances that occurred at the agency level, Pl.'s Appl. 5, it has not shown good cause for the issuance of a protective order. See RCFC 26(c). Because plaintiff has not demonstrated that a protective order is either appropriate or necessary, the court denies its application.

## B. Defendant's Motion to Compel

Turning to defendant's motion to compel, it is undisputed that defendant served upon plaintiff its first set of interrogatories and second request for production of documents. See Def.'s Mot. Exs. 1-2. Defendant certifies in its motion that it conferred–or attempted to confer–in good faith, as required by RCFC 37(a)(2)(A). See Def.'s Mot. 5. Because defendant filed its motion before the close of discovery, the motion is timely. See Days Inn Worldwide, Inc., 237 F.R.D. at 396-97. As explained above, discovery pertaining to the decedent's mental or physical condition fits within the scope of RCFC 26(b)(1), and defendant is entitled to obtain the discovery it seeks related to that issue. The court therefore grants defendant's motion to compel.

### 1. First Set of Interrogatories

The parties neither stipulated to nor sought an order from the court setting forth a shorter or longer time period for plaintiff to respond to defendant's first set of interrogatories. Plaintiff did not serve a response within thirty days, as required by RCFC 33(b)(2). Plaintiff's response was therefore untimely, and it has waived all of its objections. See RCFC 33(b)(4). In its opposition to defendant's motion to compel, plaintiff directs the court to the substance of its application. The legal position set forth in the application, however, does not excuse plaintiff's failure to provide a timely response. Accordingly, plaintiff shall be required to provide substantive responses to defendant's first set of interrogatories.

### 2. Second Request for Production of Documents

The parties neither stipulated to nor sought an order from the court setting forth a shorter or longer time period for plaintiff to respond to defendant's second request for production of documents. Plaintiff did not serve a response within thirty days, as required by RCFC 34(b)(2)(A). Plaintiff's response was therefore untimely, and it has waived all of its objections. See Marx, 929 F.2d at 12. The court reiterates that the legal position set forth in plaintiff's

application does not excuse plaintiff's failure to provide a timely response.  Accordingly, plaintiff shall be required to respond to defendant's second request for production of documents by furnishing the materials requested therein.

### 3.  Payment of Expenses

When the court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees, incurred in making the motion.  RCFC 37(a)(5)(A).  At this juncture, the court is not persuaded that the circumstances enumerated in RCFC 37(a)(5)(A)(i)-(iii) apply.  Before it enters an order requiring the payment of costs and fees in connection with defendant's motion to compel, the court shall permit plaintiff an opportunity to be heard in accordance with RCFC 37.  Plaintiff may file a brief setting forth its position concerning an award of expenses to defendant.

### C.  Enlargement of the Discovery Period

In a previous order, the court indicated that it would assess whether an extension of time to the discovery period was appropriate after it adjudicated plaintiff's application.  The court determines that such an extension of time, which would enable defendant sufficient time to (1) review plaintiff's substantive responses to its discovery requests, (2) obtain testimony from Mr. Rubinstein, and (3) conduct any additional, follow-up discovery based upon plaintiff's substantive responses, is both appropriate and in the interest of justice.  Accordingly, the court extends the discovery period an additional sixty days following the date on which plaintiff shall be required to serve upon defendant its responses to defendant's discovery requests.

### IV.  CONCLUSION

For the reasons set forth above, it is hereby **ORDERED**:

1.  Plaintiff's application for a protective order is **DENIED**.

2.  Defendant's motion to compel is **GRANTED**.

3.  Plaintiff, having waived its objections, shall serve upon defendant, by no later than **Friday, March 4, 2011**, substantive and complete responses to defendant's first set of interrogatories and defendant's second request for production of documents.

4.  Plaintiff may file, by no later than **Friday, March 4, 2011**, a brief setting forth its position concerning an award of expenses to defendant and citing, if plaintiff objects to an award, the specific reasons why it believes such an award of expenses is unjust.

5.  The discovery period shall be extended through and until **Tuesday, May 3, 2011**.  The parties shall file a joint status report proposing further proceedings by no later than **Friday May 20, 2011**.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge